UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMIE WILLIAMS, INDIVIDUALLY, AND AS ADMINSTRATRIX AD PROSEQUENDUM FOR THE ESTATE FOR PETER LEE WILLIAMS, DECEASED, AND MAUREEN WILLIAMS, INDIVIDUALLY<br><br>Plaintiffs,<br><br>-vs-<br><br>GEORGE PONIK, RALPH SCIANNI, BAYONNE POLICE DEPARTMENT, CITY OF BAYONNE, JOHN DOE POLICE OFFICER 1-10, INDIVIDUALLY AND/OR IN THEIR OFFICIAL CAPACITIES, JOINTLY, SEVERALLY AND/OR IN THE ALTERNATIVE<br><br>Defendants. | Civil Action No. 2:15-CV-01050 (JMV)(JBC)<br><br>CIVIL ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF DEFANDANTS' MOTIONS IN LIMINE**

On the Brief:
Michael I. Goldman, Esq.
Mark R. Peck, Esq.

**FLORIO PERRUCCI STEINHARDT
& FADER LLC**
218 Route 17 North, Suite 410
Rochelle Park, New Jersey 07662
Tel: (201) 843-5858
Fax: (201) 843-5877
*Attorneys for Defendants, George Ponik,
Ralph Scianni, Bayonne Police Department,
City of Bayonne*

## TABLE OF CONTENTS

|  | PAGE NOS. |
|---|---|
| **TABLE OF AUTHORITIES**………………………………………………… | ii |
| **PRELIMINARY STATEMENT**………………………………………………. | 1 |
| **LEGAL ARGUMENT**………………………………………………………….. | 1 |
|     I.    **LEGAL STANDARD**.................................................................... | 1 |
|     II.    **KUCSMA AND BETZ' TESTIMONY AND REPORT REGARDING ECONOMIC LOSSES MUST BE EXCLUDED PURSUANT TO RULE 702**…………………………………………….. | 2 |
|     III.    **STOPFORD'S REPORT AND PURPORTED TESTIMONY DOES NOT "FIT" THE FACTS OF THE CASE AND MUST BE EXCLUDED**……………………………………………………..... | 7 |
| **CONCLUSION**……………………………………………………………….. | 10 |

# TABLE OF AUTHORITIES

**Cases:**                                                                                          **Page**

Air Express Int'l v. Log-Net, Inc., No. CV121732MASTJB, 2017 WL 3816536
(D.N.J. Aug. 31, 2017) .................................................................................... 1, 2, 7, 8

Daubert v. Merrell Dow Pharms., 509 U.S. 579 (1993).................................... 2

Elcock v. Kmart Corp., 233 F.3d 734, 756 n. 13 (3d Cir. 2000) ...................... 2, 7

General Elec. Co. v. Joiner, 522 U.S. 136 (1997).......................................... 9

Paoli R.R. Yard PCB Litig., 35 F.3d 717 (3d Cir. 1994).............................. 2, 8

Pennsylvania Tr. Co. v. Dorel Juvenile Grp., Inc., 851 F. Supp. 2d 831
(E.D. Pa. 2011)................................................................................. 8

Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396 (3d Cir. 2003).........1, 2, 7, 8

TMI Litig., 193 F.3d 613 (3d Cir. 1999), amended by 199 F.3d 158 (3d Cir. 2000)....... 2

Zeller v. J.C. Penney Co., No. CIV. 05-2546RBK, 2008 WL 906350
(D.N.J. Mar. 31, 2008)...................................................................... 2, 6, 7


**Rules:**

Fed. R. Evid. 702............................................................................ 1, 2, 7, 8, 9

## PRELIMINARY STATEMENT

This Memorandum of Law is respectfully submitted on behalf of Defendants, City of Bayonne, Bayonne Police Department, George Ponik, and Ralph Scianni ("Defendants") in support of their Motions *in Limine* to exclude expert testimony of Plaintiffs' expert witnesses. Defendants seek to exclude the testimony of (1) Plaintiffs' economic loss experts Kristin K. Kucsma and Kenneth T. Betz; and (2) Plaintiffs' expert Dr. Woodhall Stopford. For the reasons set forth herein, the expert reports and purported testimony of these experts does not meet the minimum requirements for the admissibility of testimony by an expert witness under Federal Rule of Evidence 702, and therefore, these experts must be precluded from providing expert testimony in this matter.

## LEGAL ARGUMENT

### I.   LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence governs the admissibility of testimony by an expert witness. See Fed. R. Evid. 702; Air Express Int'l v. Log-Net, Inc., No. CV121732MASTJB, 2017 WL 3816536, at *1 (D.N.J. Aug. 31, 2017). Pursuant to Rule 702, a witness, who qualifies as an expert, may provide testimony if the expert's scientific, technical, or specialized knowledge will assist the trier of fact and "the testimony is based on sufficient facts or data ...; [and] is the product of reliable principles and methods ...; and the expert has reliably applied the principles and methods to the facts of the case." Air Express Int'l, 2017 WL 3816536, at *1 (citing Fed. R. Civ. Evid. 702). The Third Circuit has found "that Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability [,] and fit." Id. (citing Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003)).

1

The qualification requirement is interpreted broadly and means that the witness possesses a specialized expertise. Id. To be reliable, "the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; [and] the expert must have 'good grounds' for his or her belief." In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 742 (3d Cir. 1994) (quoting Daubert v. Merrell Dow Pharms., 509 U.S. 579, 589 (1993)). Finally, the expert's opinion must "fit the issues in the case" and help the trier of fact. Air Express Int'l, 2017 WL 3816536, at *1 (citing Schneider, 320 F.3d at 404). "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." Id. (citing Daubert, 509 U.S. at 591-92). An expert who renders an opinion based on factual assumptions not present in the case "cannot be said to 'assist the trier of fact,' as Rule 702 requires." Zeller v. J.C. Penney Co., No. CIV. 05-2546RBK, 2008 WL 906350, at *4 (D.N.J. Mar. 31, 2008) (citing Elcock v. Kmart Corp., 233 F.3d 734, 756 n. 13 (3d Cir. 2000)). Consequently, "[t]his type of an opinion misleads the fact-finder and arguably does not comply with the 'fit' requirement[.]" Id.

"[T]he district court acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability[,] and fit from reaching the jury." Id. (citing Schneider, 320 F.3d at 404). The party offering the expert testimony bears the burden of establishing the existence of each factor by a preponderance of the evidence. Id. (citing In re TMI Litig., 193 F.3d 613, 663 (3d Cir. 1999), amended by 199 F.3d 158 (3d Cir. 2000)).

## II. KUCSMA AND BETZ' TESTIMONY AND REPORT REGARDING ECONOMIC LOSSES MUST BE EXCLUDED PURSUANT TO RULE 702

Plaintiffs propose to offer expert testimony from Kristin K. Kucsma and Kenneth T. Betz ("Kucsma and Betz"), on the economic loss resulting from the death of the decedent, Peter Lee Williams. As part of expert discovery, Plaintiffs produced an expert report from Kucsma and

Betz entitled "An Appraisal of Economic Loss Resulting from the Death of Peter Williams." (See Goldman Cert., Ex. A – Expert Report of Kristin K. Kucsma and Kenneth T. Betz dated April 24, 2017 ("Kucsma and Betz Report").) Based upon the expert report produced during expert discovery, Kucsma and Betz intend to testify as to the economic loss suffered by Plaintiffs with respect to (1) household services; (2) companionship services to spouse; (3) companionship services to children; (4) advice and counsel services to spouse; and (5) advice and counsel services to children. (See id., at 6.) Kucsma and Betz' opinion is unhelpful and unreliable because it relies upon factual conclusions that are not supported by the evidentiary record. Most specifically, Kucsma and Betz' determination of pecuniary damages is based upon assumptions as to life expectancy and ability to provide services and companionship, that fail to account for and/or deviate from facts in the record. Kucsma and Betz' value of pecuniary losses is the result of bare conclusions, unsupported by factual evidence. This opinion amounts to a "net opinion" that is not admissible under the "fit" requirement of Rule 702.

    First, Kucsma and Betz' report and proposed testimony are based upon a life expectancy for Peter Lee Williams, the decedent, that is wholly unsupported by the factual record. First, Kucsma and Betz indicate a life expectancy for Mr. Williams of 81.84 years, and use the 30.7 years of life expectancy following Mr. Williams' death on June 10, 2014, as the basis for calculating economic loss. (See id., at 3.) Kucsma and Betz' assumption as to Mr. Williams' life expectancy is unsupported by the factual record, which contains an overwhelming amount of evidence as to Mr. Williams' health at the time of his death. Kucsma and Betz' expert opinion is based upon a generic male of the same age as Mr. Williams at his time of death, and not upon facts present in this specific matter.

The record in this matter includes evidence of the multitude of medical conditions from which Mr. Williams suffered at the time of his death. Medical experts for both parties agreed, based upon review of medical records, that Mr. Williams suffered from coronary artery disease with stents, end-stage renal disease on hemodialysis, hypertension, and diabetes prior to his death. (See Goldman Cert., Ex. B – Defendants' Report of Dr. Michael Disciglio ("Discligio Report"), at 2; Ex. C – Defendants' Report of Dr. Fred Aueron ("Aueron Report"), at 1-2; Ex. D – Plaintiffs' Report of Dr. Ian Newmark ("Newmark Report"), at 1.) In fact, Plaintiff produced over 3,500 pages of medical records during discovery that substantiate Mr. Williams' poor medical condition and history. Mr. Williams' medical records contain countless references to his medical condition prior to his death. For example, a record from Bayonne Medical Center dated February 14, 2012 denotes Mr. Williams' renal disease, dialysis treatment, and hypertension, among other items included in his medical history.[1] (See Goldman Cert., Ex. E – Excerpt from Peter Lee Williams Medical Records, dated February 14, 2012.) In addition, Mr. Williams voluminous medical records show that he was obtaining hemodialysis treatments three (3) times a week at Bayonne Hospital up until the time of his death. (See Goldman Cert., Ex. F – Excerpt from Peter Lee Williams Medical Records, dated June 4, 2014 through June 9, 2014.) Likewise, the Final Autopsy Report for Mr. Williams confirms his medical history, and states that Mr. Williams had cocaine in his system at the time of the accident. (See Goldman Cert., Ex. G – Final Autopsy Report.)

---

[1] As noted, Plaintiffs' discovery responses included over 3,500 pages of medical records for Peter Lee Williams. For efficiency, this submission simply refers to these documents, and provides an excerpt of same that includes reference to Mr. Williams' medical history. Defendants can make any additional documents produced during discovery available at the Court's request.

4

Based upon Mr. Williams' medical history, Defendants' medical expert Dr. Michael Disciglio opined that Mr. Williams' life expectancy at the time of his death was less than one (1) year. (See Goldman Cert., Ex. B – Disciglio Report, at 4.) Plaintiffs did not produce any expert report opining as to Mr. Williams' life expectancy, or opposing that opinion contained in Defendants' expert report. More importantly, Plaintiffs' expert report from Kucsma and Betz contains opinion as to value of economic loss that is based upon an assumption of life expectancy that is unsupported by the record. In fact, Kucsma and Betz' report completely disregards the relevant evidence regarding Mr. Williams' medical condition and history at the time of his death for purposes of opining as to life expectancy.

Likewise, Kucsma and Betz' report contains statements regarding Mr. Williams' ability to provide household and companionship services that are not support by the factual record and/or were not produced during discovery. Kucsma and Betz' report states that Mr. Williams performed various household services including cooking, cleaning, laundry and shopping, and that he was the primary caretaker of the household. (See Goldman Cert., Ex. A – Kucsma and Betz Report, at 4.) Additionally, the report provides descriptions related to Mr. Williams' relationship with his wife and children. (See id.) The report indicates that such information was sourced from responses to a questionnaire by the expert, and a telephone interview of Plaintiff Jamie Williams. (See id.) Kucsma and Betz utilize these statements to estimate the number of hours Mr. Williams would have provided in household services and companionship services throughout the duration of his life had he not died on June 10, 2014, which is used to extrapolate the economic loss presented in the report. (See id., at 4-7.)

As an initial matter, the information Kucsma and Betz relied upon, including their own questionnaire and telephone interview of Jamie Williams, was not produced during discovery at

5

any time. Moreover, Kucsma and Betz' opinions as to household services and companionship services are not based upon facts in the record, to the extent that they disregard evidence regarding Mr. Williams' medical condition. That is, Kucsma and Betz' opinions as to the number of hours Mr. Williams would have provided in services are flawed to the extent that they fail to account for any impact Mr. Williams' medical condition would have had on his ability to provide services. For example, Kucsma and Betz' report does not account for the fact that Mr. Williams spent approximately nine (9) hours a week in hemodialysis treatments, as well as time traveling to and from such treatments. (See Goldman Cert., Ex. H – Excerpt from Peter Lee Williams Medical Records, dated December 27, 2013 through December 31, 2013.) Plaintiffs' experts fail to recognize and account for any details related to Mr. Williams' medical conditions, which would certainly have had an impact on his ability to provide services. (See Goldman Cert., Ex. B – Disciglio Report, at 5.) Kucsma and Betz' conclusions that Mr. Williams provided household services equivalent to a generic married, unemployed male is not supported by the record, which uncontestedly presents Mr. Williams as an individual marred by several severe medical conditions.

The evidence in this matter includes documentation of Mr. Williams' medical condition and history at the time of his death. Kuscma and Betz' report includes a life expectancy for Mr. Williams that is nothing more than a factual assumption as it completely disregards the factual record in this case. Likewise, Kucsma and Betz did not make any adjustments to Mr. Williams life expectancy even though Plaintiffs' own medical expert acknowledged Mr. Williams' medical condition. In turn, Kucsma and Betz' entire evaluation of economic loss projections is based upon this unsubstantiated presumption as to life expectancy, and therefore, their opinion as to the value of pecuniary loss does not "fit" the case. See Zeller, 2008 WL 906350, at *4 (citing

Elcock, 233 F.3d at 756 n. 13); Air Express Int'l, 2017 WL 3816536, at *1 (citing Schneider, 320 F.3d at 404). Additionally, their conclusions facts regarding Mr. Williams' ability to provide services is both based upon facts that are not contained in the record, and fails to account for or make any adjustments in relation to facts regarding Mr. Williams' medical condition that are in the record. Ignoring "the real world of" Peter Lee Williams renders Kucsma and Betz' opinion inadmissible. See Elcock, 233 F.3d at 756 (district court abused its discretion in admitting expert's economic damages model where model relied on empirical assumptions not supported by the record, including life expectancy). Moreover, permitting Kucsma and Betz to testify in accordance with their report would mislead, rather than assist the trier of fact. Zeller, 2008 WL 906350, at *4 (citing Elcock, 233 F.3d at 756 n. 13). For these reasons, Kucsma and Betz' report and proposed testimony does not meet the qualifications of Fed. R. Evid. 702 and must be excluded.

### III. STOPFORD'S REPORT AND PURPORTED TESTIMONY DOES NOT "FIT" THE FACTS OF THE CASE AND MUST BE EXCLUDED

Plaintiffs also put forth the expert report and intended testimony of Dr. Woodhall Stopford. In particular, Dr. Stopford's report indicates that he was asked to opine on whether exposure to pepper spray can increase the risk of having a heart attack. (See Goldman Cert., Ex. I – Plaintiffs' Report of Dr. Woodhall Stopford ("Stopford Report"), at 1.) Dr. Stopford's report does not apply the purported knowledge and expertise to the facts of the case and therefore, his report and purported testimony do not meet the requirements for admissibility of expert testimony under Rule 702.

Dr. Stopford's report generally consists of (1) a representation of his expertise in the area of pepper sprays, (2) a three-sentence case summary based upon Plaintiffs' medical expert Dr. Ian Newmark, (3) an explanation of the toxicity of oleoresin capsicum, and (4) references to

7

several surveys regarding correlation between hypertensive crisis and myocardial infarction. (See id., at 1-2.) Stopford's report then presents a short opinion: "Acute exposure to pepper spray can result in acute hypertensive crisis with associated increase risk of acute coronary events including myocardial infarction. Exposed individuals with pre-existing cardiovascular disease would be particularly at risk." (See id., at 2.)

Of note, Dr. Stopford's report does not include any indication that he personally reviewed any documents in the record, including Peter Lee Williams' medical records, with the exception of relying upon Dr. Ian Newmark's report or remarks summarizing the case. More importantly, Stopford's report and opinion do not connect his purported knowledge of oleoresin capsicum to the facts of the case. As noted, the opinion section of Stopford's report merely states a general conclusion related acute exposure to pepper spray and the potential for acute hypertensive crises, but does not include any application of this principle to the facts herein. (See id., at 2.)

While Stopford opines that exposure to pepper spray can result in acute hypertensive crises, he fails to connect this theory to Peter Lee Williams. A witness may only provide expert testimony under Rule 702 where the expert has reliably applied the principles and methods to the facts of the case. Air Express Int'l, 2017 WL 3816536, at *1 (citing Fed. R. Civ. Evid. 702). This portion of Rule 702 has been explained as a requirement that the expert's opinions must "fit the issues in the case." Air Express Int'l, 2017 WL 3816536, at *1 (citing Schneider, 320 F.3d at 404); Pennsylvania Tr. Co. v. Dorel Juvenile Grp., Inc., 851 F. Supp. 2d 831, 836 (E.D. Pa. 2011) (citing In re Paoli R.R. Yard PCB Litig., 35 F.3d at 742–43). Dr. Stopford's report, and therefore his proposed testimony, would not assist the trier of fact in determining whether Peter Lee Williams' exposure to pepper spray had any such impact on him.

8

Moreover, Dr. Stopford's opinion regarding acute exposure to pepper spray and the basis for same has no connection to the undisputed facts in this matter and therefore, does not meet the qualifications for admissibility under Rule 702. In particular, Stopford's report discusses acute and excessive exposure to capsaicin, and cites to studies that involved police officers directly sprayed with pepper spray. (See Goldman Cert., Ex. I – Stopford Report, at 2.) However, this case does not involve an individual that was subject to a direct spray of pepper spray. The record is clear that Defendant Ponik sprayed a two (2) second burst of OC Spray into the air, and not directly at any individual; this fact was corroborated by Plaintiff Maureen Williams' deposition testimony. (See Goldman Cert., Ex. J – Incident Report; Ex. K – Excerpt of Defendant Ponik's Deposition, at 57:13-19; Excerpt of Plaintiff Maureen Williams' Deposition, at 81:1-8.) Likewise, Stopford's reliance upon studies involving exposure to capsaicin by animals, and to humans through ingestion of chili peppers are so dissimilar to the facts presented in this litigation that they cannot sufficiently support his opinions. See General Elec. Co. v. Joiner, 522 U.S. 136, 144 (1997); (see Goldman Cert., Ex. I – Stopford Report, at 2.) The studies upon which Stopford relies are insufficiently connected to the within matter, and cannot be used to form the basis of expert testimony. In total, the bases upon which Stopford's opinion is formed are not reliable and do not "fit" to the fact and issues in this case, such that his testimony would not help the trier of fact. As such, Dr. Stopford's report and proposed testimony cannot meet the qualifications for expert testimony, and must be excluded.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motions *in Limine*.

/s/ *Michael I. Goldman, Esq.*
FLORIO PERRUCCI STEINHARDT &
FADER, LLC
Mark R. Peck, Esq.
Michael I. Goldman, Esq.
218 Route 17 North, Suite 410
Rochelle Park, New Jersey 07662
Tel: (201) 843-5858
Fax: (201) 843-5877
mpeck@fpsflawfirm.com
mgoldman@fpsflawfirm.com
*Attorneys for Defendants*, *George Ponik,
Ralph Scianni, Bayonne Police Department,
City of Bayonne*

Dated: February 9, 2018